# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

ROCHELLE G.[1],              Case No. 1:21-cv-744
    Plaintiff,             Litkovitz, M.J.

    vs.

COMMISSIONER OF               **ORDER**
OF SOCIAL SECURITY,
    Defendant.

Plaintiff Rochelle G. brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). This matter is before the Court on plaintiff's Statement of Errors (Doc. 13), the Commissioner's response in opposition (Doc. 14), and plaintiff's reply memorandum (Doc. 15).

## I. Procedural Background

Plaintiff protectively filed her applications for DIB and SSI on May 22, 2020, alleging disability since August 15, 2018, due to hypertension, scoliosis, arthritis of the back and knees, and joint effusion of the right knee. The applications were denied initially and upon reconsideration. Plaintiff, through counsel, requested and was granted a *de novo* hearing before administrative law judge ("ALJ") Cristen Meadows. Plaintiff and a vocational expert ("VE") appeared telephonically and testified at the ALJ hearing on March 30, 2021. On May 3, 2021,

---

[1] Pursuant to General Order 22-01, due to significant privacy concerns in social security cases, any opinion, order, judgment or other disposition in social security cases in the Southern District of Ohio shall refer to plaintiffs only by their first names and last initials.

the ALJ issued a decision denying plaintiff's DIB and SSI applications. This decision became the final decision of the Commissioner when the Appeals Council denied review on September 23, 2021.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

2

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)).  The claimant has the burden of proof at the first four steps of the sequential evaluation process.  *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004).  Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy.  *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999).

**B.  The Administrative Law Judge's Findings**

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

1. The [plaintiff] meets the insured status requirements of the Social Security Act through September 30, 2023.

2. The [plaintiff] has not engaged in substantial gainful activity since August 15, 2018, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The [plaintiff] has the following severe impairments: degenerative disc disease, [and] degenerative joint disease (20 CFR 404.1520(c) and 416.920(c)).

4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, [the ALJ] find[s] that the [plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can occasionally climb ramps or stairs; never climb ladders, ropes, or scaffolds; frequently balance;

occasionally stoop, kneel, [or] crouch; never crawl; and should have no exposure to hazards of unprotected heights or dangerous moving machinery.

6. The [plaintiff] is capable of performing past relevant work as [an] assistant manager, retail; caseworker; data examiner; administrative assistant; and merchandiser. [This] past relevant work do[es] not require the performance of work-related activities precluded by the [plaintiff]'s residual functional capacity (20 CFR 404.1565 and 416.965).

7. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from August 15, 2018, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 31-40).

**C.  Judicial Standard of Review**

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards.  *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill*, ___ U.S. ___, 139 S. Ct. 1148, 1154 (2019) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).  Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).  In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole.  *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

4

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a [plaintiff] on the merits or deprives the [plaintiff] of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen,* 478 F.3d at 746).

### D. Specific Error

In the sole assignment of error, plaintiff alleges the ALJ "failed to properly consider the opinion of John Mark Roberts, M.D., and [] failed to adequately explain his analysis for rejecting the restrictions which Dr. Roberts assessed." (Doc. 13 at PAGEID 581). Plaintiff argues that "in crafting the RFC," the ALJ failed to include certain restrictions and limitations opined by Dr. Roberts. (*Id*. at PAGEID 582). Plaintiff also argues that the ALJ erred by concluding that "nothing in the record supports the restrictions assessed by Dr. Roberts. . . ." (*Id*.). Plaintiff states the ALJ "overlook[ed] the observations" of her chiropractor, Dr. Dan Buchanan, in assessing her level of functioning because Dr. Roberts' "observations, together with Dr. Buchanan[']s diagnoses . . . provide objective medical evidence that is consistent with the restrictions which Dr. Roberts assessed." (*Id*., citing Tr. 483-84).

The Commissioner argues that the ALJ's decision is supported by substantial evidence because the ALJ reasonably evaluated the opinions of Dr. Roberts pursuant to the new regulations applicable to plaintiff's claims. (Doc. 14).

For claims filed on or after March 27, 2017, new regulations apply for evaluating medical

opinions.  *See* 20 C.F.R. §§ 404.1520c and 416.920c (2017); *see also* 82 Fed. Reg. 5844-01,

2017 WL 168819 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15132-01, 2017

WL 1105368 (Mar. 27, 2017)).  These new regulations eliminate the "treating physician rule"

and deference to treating source opinions, including the "good reasons" requirement for the

weight afforded to such opinions.[2]  *Id*.  The Commissioner will "not defer or give any specific

evidentiary weight, including controlling weight, to any medical opinion(s) or prior

administrative medical finding(s)[3], including those from your medical sources."  20 C.F.R. §

404.1520c(a); 20 C.F.R. § 416.920c(a).  Rather, the Commissioner will consider "how

persuasive" the medical opinion is.  20 C.F.R. § 404.1520c(b); 20 C.F.R. § 416.920c(a).[4]

    In determining the persuasiveness of a medical opinion, the ALJ considers five factors:

(1) supportability, (2) consistency, (3) relationship with the claimant, including length of

treatment relationship, frequency of examinations, purpose of the treatment relationship, and

examining relationship, (4) specialization, and (5) other factors that tend to support or contradict

---

[2] For claims filed prior to March 27, 2017, a treating source's medical opinion on the issue of the nature and severity of an impairment is given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2).  *See also Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013).  "The Commissioner is required to provide 'good reasons' for discounting the weight given to a treating-source opinion." *Id.* (citing 20 C.F.R. § 404.1527(c)(2)).

[3] A "prior administrative medical finding" is defined as "[a] finding, other than the ultimate determination about whether the individual is disabled, about a medical issue made by an MC [medical consultant] or PC [psychological consultant] at a prior administrative level in the current claim."  82 Fed. Reg. 5844-01, 2017 WL 168819, at *5850.

[4] "The Commissioner's regulations governing the evaluation of disability for DIB and SSI are identical."  *Miller v. Comm'r of Soc. Sec.*, No. 3:18-cv-281, 2019 WL 4253867, at *1 n.1 (S.D. Ohio Sept. 9, 2019) (quoting *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007)).  For claims filed on or after March 27, 2017, these regulations are found at 20 C.F.R. § 404.1520c and 20 C.F.R. § 416.920c, respectively.  The Court's references to DIB regulations should be read to incorporate the corresponding and identical SSI regulations, and vice versa, for purposes of this Order.

a medical opinion. 20 C.F.R. § 404.1520c(c)(1)-(5). The most important factors the ALJ must consider are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). With respect to the supportability factor, "[t]he more relevant the objective medical evidence[5] and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). Similarly, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s). . . ." 20 C.F.R. § 404.1520c(c)(2). The ALJ is required to "*explain* how [he/she] considered the supportability and consistency factors for a medical source's medical opinions" in the written decision. 20 C.F.R. § 404.1520c(b)(2) (emphasis added). Conversely, the ALJ "may, but [is] not required to, explain" how he/she considered the relationship, specialization, and other factors set forth in paragraphs (c)(3) through (c)(5) of the regulation. *Id.* However, where two or more medical opinions or prior administrative findings about the same issue are equally persuasive, the ALJ must articulate how he or she "considered the other most persuasive factors in paragraphs (c)(3) through (c)(5). . . ." 20 C.F.R. § 404.1520c(b)(3). Finally, the ALJ is not required to articulate how he or she considered evidence from nonmedical sources. 20 C.F.R. § 404.1520c(d).

On February 7, 2020, plaintiff consulted with Dr. Roberts for her back pain. (Tr. 381-86). Plaintiff reported that 50% of her pain was in her back and 50% of her pain was in her legs. (Tr. 382). Plaintiff stated the pain radiates into her buttocks and posterolateral thigh to the knee but not below. (*Id.*). Plaintiff stated she had undergone chiropractic intervention over the last

---

[5] Objective medical evidence is defined as "signs, laboratory findings, or both." 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5850.

six months without benefit, and she was on Ultram without benefit. (*Id.*). On physical examination, Dr. Roberts noted that plaintiff's reflexes, motor strength, sensation, and gait were intact; she was able to heel-walk and toe-walk; she had full pain-free range of motion in both hips; and her abdomen was soft and nontender without organomegaly and her distal pulses were intact. (*Id.*). Dr. Roberts ordered a lumbar MRI without contrast. (Tr. 384).

The MRI of plaintiff's lumbar spine, taken on February 28, 2020, showed grade 1 anterolisthesis of L3 on L4 and grade 1 retrolisthesis of L4 on L5. The MRI also showed lumbar spondylosis at multiple levels producing moderate to severe central stenosis at both L3-L4 and L4-L5 with no definite compressive foraminal stenosis. (Tr. 387-88).

On July 23, 2020, plaintiff had a follow-up appointment with Dr. Roberts. (Tr. 378-80). Plaintiff continued to report neurogenic claudication with difficulty standing for any time and walking any distance. (Tr. 379). Dr. Roberts reviewed plaintiff's MRI and noted severe stenosis at L3-L4. (*Id.*). Dr. Roberts recommended a trial of therapy for home exercises and core strengthening with a follow-up appointment in six months. (Tr. 380). Dr. Roberts opined that plaintiff would not be able to perform her past work in the social outreach role and as day laborer in a warehouse. (*Id.*). Specifically, Dr. Roberts stated, "I do think she is disabled from her prior employment. I told her that we would handle the disability paperwork for her." (*Id.*).

On January 26, 2021, plaintiff had a follow-up appointment with Dr. Roberts. (Tr. 492-95). Plaintiff stated she "continue[d] to struggle with her ability to stand for any time or walk any distance. She is moderately frustrated with this. She is no longer able to work on her administrative job. She is spending a lot of time taking care of family members which are ill at

8

this time." (Tr. 494).  Dr. Roberts noted that plaintiff's "examination [was] unremarkable for

motor, strength, gait, [and] reflexes."  (*Id*.).  Dr. Roberts "reviewed" plaintiff's "past studies . . .

[which] indicat[ed] the degenerative changes at L3-4, L4-5, [and] L5-S1 with severe facet

disease and varying degrees of stenosis" and stated, "It remains my opinion that she is

permanently and totally disabled by virtue of this."  (*Id*.).  In the "Plan" section of the treatment

note, Dr. Roberts stated:

> Plan:  She is able to function reasonably well so I have recommended she focus on
> ambulation, keeping her weight down, and cessation of smoking.  I am going to
> refill the Naprosyn for her.  She uses it as needed and I will see her back in 6 months.
> No x-rays at th[is] time.

(*Id*.).

On February 17, 2021, Dr. Roberts completed a "Treating Source Statement" on behalf of

plaintiff, in which he opined that plaintiff would be off task 25% of the workday; she could only

lift or carry more than 10 pounds rarely; she could only sit or stand less than one hour in an

eight-hour workday; she could rarely do overhead reaching, handling, fingering, feeling, and

pushing/pulling with the left arm/hand and rarely use foot controls bilaterally; she could never

climb ladders and scaffolds, kneel, crouch, or crawl; and she could only rarely climb stairs and

ramps, balance, and stoop and only occasionally rotate her head and neck.  (Tr. 498-501).

The ALJ found Dr. Roberts' opinions "not persuasive." (Tr. 39).  The ALJ stated:

> Dr. Roberts' opinions are not persuasive.   The opinion that a claimant is
> permanently and totally disabled, or that she is unable to perform her past relevant
> work, are opinions on an issue reserved to the Commissioner.   The opinions are
> therefore not controlling in regards to the residual functional capacity.  Moreover,
> Dr. Roberts' opinion that the claimant's functional capacity at less than sedentary
> work is rather vague (*e.g.*, "rarely") and is not consistent with the evidence of
> record.  She has received routine and conservative treatment, including from Dr.

Roberts.  Nothing in the record shows the claimant would be off task for 25% of the workday or that she would only be able to lift up to 10 pounds rarely.  Dr. Roberts also did not explain his opinion and his assessment of the claimant's functioning is not consistent with his treatment records which generally noted intact reflexes and motor strength, a normal gait; she was able to heel-walk-toe walk, and was pain free on range of motion of both hips (*see e.g.*, 3F/12).  Considerations of the opinions in their supporting context are therefore given only on the extent to which they are supported by specific and complete clinical findings and are consistent with the rest of the evidence in file.  As any medical opinion, they must be evaluated along with the rest of the evidence in the case record to determine the extent to which such opinions are supported by the record.

(*Id.*).

Plaintiff contends the ALJ's evaluation of Dr. Roberts' opinions is unsupported by substantial evidence because the ALJ "failed to adequately explain his analysis for rejecting the restrictions which Dr. Roberts assessed."  (Doc. 13 at PAGEID 582, citing Tr. 20, 498).

The ALJ's evaluation of Dr. Roberts' opinions is supported by substantial evidence. First, Dr. Roberts' opinion that plaintiff "is disabled from her prior employment" (Tr. 380) and "is permanently and totally disabled" (Tr. 494) amounts to an issue reserved to the Commissioner based on Social Security rules and regulations.  Whether a person is disabled within the meaning of the Social Security Act, i.e., unable to engage in substantial gainful activity, is an issue reserved to the Commissioner, and a medical source's opinion that his patient is "disabled" or "unable to work" is not "giv[en] any special significance."  20 C.F.R. § 404.1527(d)(3).  *See Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007) (opinion by medical source on issues reserved to Commissioner is never entitled to controlling weight or special significance); *see also Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).

Therefore, the ALJ reasonably found that Dr. Roberts' opinions that plaintiff would be unable to sustain employment are not persuasive.

Second, the ALJ reasonably determined that Dr. Roberts' opinion was not supported by his own progress notes and inconsistent with plaintiff's repeated normal examinations. (Tr. 39). For example, although Dr. Roberts opined that plaintiff would be off task 25% of the workday and could only lift or carry more than 10 pounds rarely (Tr. 498-99), the ALJ reasonably found that "[n]othing in the record shows the claimant would be off task for 25% of the workday or that she would only be able to lift up to 10 pounds rarely." (Tr. 39). The ALJ explained that these opinions were "not consistent with [Dr. Roberts'] treatment records which generally noted intact reflexes and motor strength, a normal gait[,] [plaintiff's ability] to heel-walk-toe-walk, and [plaintiff being] pain free on range of motion of both hips." (*Id*.).

Plaintiff has not cited any evidence that is inconsistent with the ALJ's finding. Contrary to plaintiff's argument, the medical evidence of record supports the ALJ's finding that Dr. Roberts' opinions were not supported by his own treatment notes and inconsistent with the evidence of record. Plaintiff's physical examinations were unremarkable, and Dr. Roberts repeatedly observed that plaintiff's reflexes, motor strength, sensation, and gait were intact; she was able to heel-walk and toe-walk; and she had full pain-free range of motion in both hips. (*See* Tr. 382, 494).

Moreover, the ALJ considered the MRI that Dr. Roberts ordered when discussing the medical evidence of record. (Tr. 34, 37). Although the MRI showed grade 1 anterolisthesis of L3 on L4 and grade 1 retrolisthesis of L4 on L5 and lumbar spondylosis at multiple levels

producing moderate to severe central stenosis at both L3-L4 and L4-L5 with no definite compressive foraminal stenosis (Tr. 387-88), Dr. Roberts recommended relatively conservative treatment consisting of a trial of therapy for home exercises and core strengthening with a follow-up appointment in six months.  (Tr. 379-80).

Further, on the same day that Dr. Roberts opined that plaintiff was "permanently and totally disabled," Dr. Roberts found that plaintiff's physical "examination [was] unremarkable for motor, strength, gait, [and] reflexes."  (Tr. 494).  Even further, following the statement that plaintiff was "permanently and totally disabled," Dr. Roberts stated, in the very next sentence of the treatment note, that plaintiff was "able to function reasonably well. . . ."  (*Id*.).  Dr. Roberts' opinions concerning plaintiff's total disability are odds and inconsistent with plaintiff's repeated normal physical examinations and statement that plaintiff was "able to function reasonably well. . . ."  (*Id*.).

Additionally, Dr. Roberts' restrictions are not supported by his own treatment notes. Notably, in opining that plaintiff can rarely lift less than ten pounds, Dr. Roberts only cited the January 26, 2021 treatment note with no accompanying explanation.  (Tr. 499: "see medical of 1 - 26 - 2021").  As noted above, plaintiff's clinical findings on examination were benign and plaintiff was "able to function reasonably well. . . ."  (Tr. 494).  Accordingly, the ALJ's finding that Dr. Roberts' opinions are "not persuasive" is supported by substantial evidence.

Third, the ALJ reasonably determined that Dr. Roberts' opinions are inconsistent with the evidence of record which showed plaintiff "received routine and conservative treatment, including from Dr. Roberts."  (Tr. 39).  As the ALJ noted in the decision, plaintiff's treatment

during the alleged period of disability consisted of the use of pain medication, chiropractic care, heat and ice, and home exercises. (Tr. 35-37, 39, 356, 361, 380, 494). Accordingly, the ALJ's finding that Dr. Roberts' opinions are not supported his own treatment notes, inconsistent with other medical records, and inconsistent with plaintiff's conservative treatment is supported by substantial evidence. *See Wendy D. H. v. Comm'r of Soc. Sec. Admin.*, No. 3:20-cv-387, 2022 WL 621433, at *3-4 (S.D. Ohio Mar. 3, 2022).

Plaintiff also argues that "the ALJ's declaration – that nothing in the record supports the restrictions assessed by Dr. Roberts – overlooks the observations of" her chiropractor, Dr. Dan Buchanan. (Doc. 13 at PAGEID 583; *see also* Doc. 15 at PAGEID 601). The ALJ, however, expressly took into account the chiropractor's records and observations in formulating the RFC. (Tr. 37-38). In doing so, the ALJ stated:

> [T]he only two records from her chiropractor are from May 2019 and January 2021; and only the January 2021 record indicated difficulty walking (7F/2). Because of her lumbar stenosis, associated with positive straight leg raise and weakness on lumbar range of motion, she is limited to light work except she can occasionally climb ramps or stairs. Her bilateral osteoarthritis of the hips would limit her to frequently balance, as her record generally noted no balance issues; but because of her knee effusions and crepitus noted on exam, she is limited to occasionally stoop, kneel, and crouch; and can never crawl because of her lumbar stenosis and arthritis in her hips and knees, as well as for precautions due to her complicating factors including hypertension and borderline obesity. Moreover, she is prescribed with medications including a muscle relaxer. She should have no exposure to hazards of unprotected heights or dangerous moving machinery; and she [should] never climb ladders, ropes, or scaffolds.

(*Id.*; *see also* Tr. 34, 36: discussing plaintiff's chiropractic care). Plaintiff fails to explain how the ALJ erred in this regard. Accordingly, to the extent plaintiff argues that the ALJ's RFC does

not take into account the restrictions and limitations opined by plaintiff's chiropractor and Dr. Roberts, plaintiff's argument is without merit and overruled.

Within this assignment of error, plaintiff also argues that the Commissioner failed to meet her burden at Step Four of the sequential evaluation process because the "jobs which Plaintiff has done in the past could not be performed by an individual with the restrictions which Dr. Roberts assessed, and the ALJ did not obtain any alternate vocational testimony." (Doc. 13 at PAGEID 584, citing Tr. 77-80).

At Step Four of the sequential evaluation process, the ALJ determined that plaintiff is capable of performing her past relevant work as an assistant manager, retail; caseworker; data examiner; administrative assistant; and merchandiser, as those positions do not require the performance of work-related activities precluded by plaintiff's RFC. (Tr. 39-40). The burden is on the claimant at Step Four of the sequential evaluation process to show that she is unable to perform her past relevant work. *See Rabbers*, 582 F.3d at 652 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)); *Wilson*, 378 F.3d at 548. Here, plaintiff has provided no evidence of record, aside from Dr. Roberts' opinion discussed above, to show that she is unable to perform the functional demands and job duties of the stated positions. Accordingly, plaintiff's argument in this regard is without merit and overruled.

## III. Conclusion

Based on the foregoing, plaintiff's Statement of Errors (Doc. 13) is **OVERRULED**, and the Commissioner's non-disability finding is **AFFIRMED**. **IT IS THEREFORE ORDERED**

14

that judgment be entered in favor of the Commissioner and this case is closed on the docket of the Court.

Date: 9/1/2022

Karen L. Litkovitz
Chief United States Magistrate Judge